Filed 12/26/13  Certified for publication 1/15/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| CITY OF SACRAMENTO | C072944 |
| Petitioner, | (Super. Ct. No. ADJ7238353) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and ARTHUR CANNON, | |
| Respondents. | |

In this workers' compensation case, an agreed medical examiner determined that respondent Arthur Cannon's left foot condition -- plantar fasciitis -- was equivalent to a limp with arthritis, which resulted in a 7 percent whole person impairment for purposes of determining permanent disability.  On review, Cannon's self-insured employer, the City of Sacramento (the city) contends a rating of impairment by analogy to a different condition is impermissible when (as here) no objective abnormalities are found and the rating is based solely on subjective complaints of pain.  The city also contends that a "rating by analogy" is permissible only in complex or extraordinary cases, and plantar fasciitis is neither.

Finding no merit in the city's arguments, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In October 2008, Cannon injured his left foot and heel while working as a police officer for the city. He was diagnosed with plantar fasciitis and provided with physical therapy, cortisone injections, and an orthotic device. His primary treating physician found him permanent and stationary in January 2010, with no impairment of his activities of daily living and capable of performing his usual occupation.

In October 2010, an agreed medical examiner, Dr. William Ramsey, agreed Cannon was permanent and stationary and that there was no impairment but recommended that he be precluded from such things as prolonged running.

In February 2011, at the request of Cannon's attorney, Dr. Ramsey issued a supplemental report "to comment regarding [Cannon]'s impairment status using *Almaraz/Guzman-II* issues."[1] Dr. Ramsey explained that at the time of his original report in October 2010, he was "unable to offer any impairment from a strict interpretation of the *AMA Guides, 5th Edition*"[2] because "other than some tenderness, no objective abnormalities were identifiable." Now, however, Dr. Ramsey determined that it was acceptable to characterize Cannon's residual condition "using a gait derangement abnormality" "by analogy, using *Almaraz/Guzman-II* as a basis." Noting that Cannon's problem was "relatively mild," with "the left heel causing weightbearing problems" and the likelihood that the condition "would . . . be aggravated appreciably by running activity on other than a short-term basis," Dr. Ramsey recommended characterizing

---

[1]     As we will explain, *Almaraz/Guzman* refers to the decision of the Workers' Compensation Appeals Board (the board) in *Almaraz v. Environmental Recovery Services/Guzman v. Milpitas Unified School Dist.* (2009) 74 Cal.Comp.Cases 1084.

[2]     AMA Guides refers to the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (5th Edition), discussed more fully below.

2

Cannon by reference to "Table 17-5, page 529," as having "a limp, despite the absence of any arthritic changes about adjacent joints, equivalent to 7% whole person impairment."

In June 2011, at the request of the city's attorney, Dr. Ramsey issued a second supplemental report "to further discuss the basis for [his] recommending some impairment due to [Cannon]'s residual heel complaints." In this report, Dr. Ramsey noted that "heel pain, or for that matter, other aspects of pain that do not have any accompanying objective measurement abnormalities, do not rate anything in the *AMA Guides*, whether or not these problems interfere with one's activities. Thus, a strict interpretation of the Guides does not always appropriately characterize an injured worker's problems." Dr. Ramsey explained because Cannon's heel pain "interferes with weightbearing activities, particularly running," he "thought that by analogy, it would be similar to an individual with a limp and arthritis, resulting in the 7% impairment recommended."

The case was tried in October 2011. In a trial brief, the city argued that a rating by analogy under *Almaraz/Guzman* would be proper only if the case could be characterized as "complex or extraordinary," which Cannon's injury could not be. The workers' compensation judge (judge) agreed, finding that Cannon had no permanent disability because his medical condition was not complex or extraordinary and therefore did not warrant departure from a strict application of the AMA Guides.

Cannon petitioned for reconsideration, arguing that a case does not have to be complex or extraordinary to be rated by analogy under *Almaraz/Guzman*. The board granted reconsideration and, agreeing with Cannon, rescinded the judge's findings and award and returned the matter to him for a new permanent disability rating based on Dr. Ramsey's findings. With one member dissenting, the board explained that "the language cited by the [judge] to limit a rating by analogy only to cases with 'complex or extraordinary' medication conditions does not support his interpretation. Rather than further restrict a physician's expertise, this language should be read to reflect the ability

3

of a physician to rate an impairment by analogy, within the four corners of the Guides, where a strict application of the Guides does not accurately reflect the impairment being assessed." The board noted that Cannon's "condition, plantar fasciitis, does not have a standard rating, with no specifically applicable 'chapter, table or method' provided in the AMA Guides, and thus can <u>only</u> be rated by analogy to other impairments, and/or by analysis of the injury's impact on activities of daily living." The board concluded that Dr. Ramsey had "provided by analogy an accurate assessment of [Cannon]'s medical condition that meets the requirements of *Almaraz/Guzman*, for a condition that is not covered by the AMA Guides."

The city subsequently sought a writ of review, which we issued.

## DISCUSSION

On review, the city contends it is improper to rate an applicant's condition by analogy under *Almaraz/Guzman* where there are no objective findings and the rating is based solely upon subjective complaints and speculation. The city further argues that under the Sixth District's decision in *Milpitas Unified School Dist. v. Workers' Comp. Appeals Bd.* (2010) 187 Cal.App.4th 808 (*Milpitas Unified*),"a variation from the strict application of the [AMA Guides'] whole person impairment analysis must apply only to those cases that are <u>complex</u> or <u>extraordinary</u>." We disagree on both points.

### I

### *Statutory Background*

We draw the necessary statutory background, at some length, from *Milpitas Unified*:

4

"*1. [Labor Code] Section 4660*[3]

"The workers' compensation system in California underwent comprehensive reform in 2004 with the passage of Senate Bill No. 899. . . . The revised provisions substantially affected the assessment of an injured worker's permanent disability. A schedule for assessing permanent disability had been required since 1937, and it was always expressly intended to manifest 'prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule.' . . . [H]owever, no guidance was provided for the formulation of the schedule until the 2004 amendment. In accordance with the revision, the administrative director is now required to develop and regularly amend the rating schedule based on specified data from empirical studies. The schedule 'shall promote consistency, uniformity, and objectivity.' [Citation.] As so directed, the administrative director published a new PDRS [permanent disability rating schedule] effective January 1, 2005, which incorporated the fifth edition of the [AMA] *Guides* in its entirety. [Citation.]

"*2. Impairment and Disability*

"The statutory revision most significant for the resolution of [this] case is the new condition that the determination of 'the "nature of the physical injury or disfigurement" shall incorporate the descriptions and measurements of physical impairments and the corresponding percentages of impairments published in the [AMA Guides].' (§ 4660, subd. (b)(1).)

"First published in 1971 to provide 'a standardized, objective approach to evaluating medical impairments' [citation], the AMA Guides sets forth measurement criteria that certified rating physicians and chiropractors can use to ascertain and rate the medical impairment suffered by injured workers. [Citation.] 'Impairment' is defined in

---

**3**     All further section references are to the Labor Code.

the Guides as 'a loss, loss of use, or derangement of any body part, organ system or organ function.' [Citation.] The impairment ratings provided in the Guides 'were designed to reflect functional limitations and not disability.' [Citation.] They 'reflect the severity of the medical condition and the degree to which the impairment decreases an individual's ability to perform common activities of daily living (ADL), *excluding* work.' [Citation.]

"A permanent disability, on the other hand, ' " 'causes impairment of earning capacity, impairment of the normal use of a member, or a competitive handicap in the open labor market.' " ' [Citation.] 'A disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment.' [Citation.] Permanent disability is expressed as a percentage: Anything less than 100 percent (total disability) entitles the injured worker to a prescribed number of weeks of indemnity payments in accordance with that percentage. [Citation.] 'Thus, permanent disability payments are intended to compensate workers for both physical loss and the loss of some or all of their future earning capacity.' [Citation.]

" 'In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his or her age at the time of the injury, consideration being given to an employee's diminished future earning capacity.' (§ 4660, subd. (a).) The 'nature of the physical injury' refers to impairment, which is expressed as a percentage reflecting the 'severity of the medical condition and the degree to which the impairment decreases an individual's ability to perform common activities of daily living (ADL), *excluding* work.' [Citation.] In each case impairment ratings are combined and converted to a [whole person impairment] (WPI) rating, which reflects the impact of the injury on the 'overall ability to perform activities of daily living, excluding work.' [Citation.] The WPI is then adjusted for diminished future earning capacity . . . the employee's occupation classification at the time of the injury, and age. Of these four components, it is the

6

'nature of the injury,' expressed in terms of impairment, that is the source of the controversy in this case." (*Milpitas Unified*, *supra*, 187 Cal.App.4th at pp. 818-820, fns. omitted.)

## II

### *Almaraz/Guzman*

In *Almaraz/Guzman*, the board concluded that "the WPI component of any scheduled permanent disability rating *must* be based on the AMA Guides, i.e., the WPI component cannot be predicated on the opinion of a physician who has gone outside the four corners of the Guides to make an impairment determination." (*Almaraz/Guzman*, *supra*, 74 Cal.Comp.Cases at p. 1101.) The board then went on to explain as follows:

"Nevertheless, although the WPI component of a scheduled rating must be founded on the AMA Guides (except in the case of psychiatric impairments), a physician is not inescapably locked into any specific paradigm for evaluating WPI under the Guides. Section 4660(b)(1) provides that the WPI component of a scheduled rating is to be rooted in 'the descriptions and measurements of physical impairments and the corresponding percentages of impairments published in the [AMA Guides].' Therefore, section 4660(b)(1) does not mandate that the impairment for any particular condition must be assessed in any particular way under the Guides. Moreover, while the AMA Guides often sets forth an analytical framework and methods for a physician in assessing WPI, the Guides does not relegate a physician to the role of taking a few objective measurements and then mechanically and uncritically assigning a WPI that is based on a rigid and standardized protocol and that is devoid of any clinical judgment. Instead, the AMA Guides expressly contemplates that a physician will use his or her judgment, experience, training, and skill in assessing WPI.

"Specifically, the AMA Guides provides: 'The physician's role in performing an impairment evaluation is to provide an independent, unbiased assessment of the individual's medical condition, including its effect on function, and identify abilities and

7

limitations to performing activities of daily living. . . . Performing an impairment evaluation requires considerable medical expertise and judgment.' [Citation.] Similarly, the Guides states: 'The physician must use the entire range of clinical skill and judgment when assessing whether or not the measurements or tests results are plausible and consistent with the impairment being evaluated. If, in spite of an observation or test result, the medical evidence appears insufficient to verify that an impairment of a certain magnitude exists, the physician may modify the impairment rating accordingly and then describe and explain the reason for the modification in writing.' [Citation.] Further, the Guides recites: 'In situations where impairment ratings are not provided, the *Guides* suggests that physicians use clinical judgment, comparing measurable impairment resulting from the unlisted condition to measureable impairment resulting from similar conditions with similar impairment of function in performing activities of daily living. [¶] The physician's judgment, based upon experience, training, skill, thoroughness in clinical evaluation, and ability to apply the *Guides* criteria as intended, will enable an appropriate and reproducible assessment to be made of clinical impairment.' [Citation.]

"Therefore, based upon the physician's judgment, experience, training, and skill each reporting physician (treater or medical-legal evaluator) should give an expert opinion on the injured employee's WPI using the chapter, table, or method of assessing impairment of the AMA Guides that most accurately reflects the injured employee's impairment. [Citation.] This does not mean, of course, that a physician may arbitrarily assess an injured employee's impairment. As stated by the AMA Guides, '[a] clear, accurate, and complete report is essential to support a rating of permanent impairment' and the report should 'explain' its impairment conclusions. [Citation.] In other words, a physician's WPI opinion must constitute substantial evidence upon which the [board] may properly rely, including setting forth the reasoning behind the assessment. [Citation.]

"A physician's WPI opinion that is not based on the AMA Guides does not constitute substantial evidence because it is inconsistent with the mandate of section 4660(b)(1)." (*Almaraz/Guzman*, *supra*, 74 Cal.Comp.Cases at pp. 1103-1104, fn. omitted.)

III

*Milpitas Unified*

In *Milpitas Unified*, the Sixth District reviewed the board's decision in *Almaraz/Guzman* upon petition by Guzman's employer. (*Milpitas Unified*, *supra*, 187 Cal.App.4th at p. 812.) The court framed the "primary issue" as "whether section 4660, following the 2004 revisions, permits deviation from a strict application of the descriptions, measurements, and percentages contained in the Guides for purposes of determining the impairment resulting from an employee's workplace injury." (*Id.* at p. 820.) In addressing that issue, the court "agree[d] with the District that the Guides must be applied 'as intended' and 'as written,' " but the court took "a broader view of both [the AMA Guides'] text and the statutory mandate." (*Id.* at p. 822.) The court explained as follows:

"Section 4660, subdivision (b)(1), recognizes the variety and unpredictability of medical situations by requiring *incorporation* of the descriptions, measurements, and corresponding percentages in the Guides for each impairment, not their mechanical application without regard to how accurately and completely they reflect the actual impairment sustained by the patient. To 'incorporate' is to 'unite with or introduce into something already existent . . . ,' to 'take in or include as a part or parts . . . ,' or to 'unite or combine so as to form one body.' [Citation.] Section 4660, subdivision (b)(1), thus requires the physician to include the descriptions, measurements, and percentages in the applicable chapter of the Guides as part of the basis for determining impairment.

"We cannot expand the statutory mandate by changing the word 'incorporate' to 'apply exclusively.' Nor can we read into the statute a conclusive presumption that the

9

descriptions, measurements, and percentages set forth in each chapter are invariably accurate when applied to a particular case. By using the word 'incorporation,' the Legislature recognized that not every injury can be accurately described by the classifications designated for the particular body part involved. Had the Legislature wished to require every complex situation to be forced into preset measurement criteria, it would have used different terminology to compel strict adherence to those criteria for every condition. A narrower interpretation would be inconsistent with the clear provision that the Schedule—which itself incorporates the Guides [citation]—is rebuttable (§ 4660, subd. (c)), and it would not comport with the legislative directive to construe the workers' compensation statutes liberally 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment. . . .' " (*Milpitas Unified*, *supra*, 187 Cal.App.4th at p. 822.)

The court later added as follows: "The Guides itself recognizes that it cannot anticipate and describe every impairment that may be experienced by injured employees. The authors repeatedly caution that notwithstanding its 'framework for evaluating new or complex conditions,' the 'range, evolution, and discovery of new medical conditions' preclude ratings for every possible impairment. [Citation.] The Guides ratings do provide a standardized basis for reporting the degree of impairment, but those are 'consensus-derived estimates,' and some of the given percentages are supported by only limited research data. [Citation.] The Guides also cannot rate syndromes that are 'poorly understood and are manifested only by subjective symptoms.' [Citation.] [¶] To accommodate those complex or extraordinary cases, the Guides calls for the physician's exercise of clinical judgment to assess the impairment most accurately. Indeed, throughout the Guides the authors emphasize the necessity of 'considerable medical expertise and judgment,' as well as an understanding of the physical demands placed on the particular patient." (*Milpitas Unified*, *supra*, 187 Cal.App.4th at p. 823.)

10

# IV

## *The City's Arguments*

The city first argues that the legislative intent behind Senate Bill No. 899 in 2004 was "to promote consistency and uniformity based upon objective findings" and here "there is consistency in the objective findings and that is there are no objective findings." The thrust of the city's argument is that a rating by analogy under *Almaraz/Guzman* is not permissible where (as here) no objective abnormalities are found and the rating is based solely on subjective complaints of pain.

The city's argument is not persuasive. There is nothing in the 2004 amendment to section 4660 that precludes a finding of impairment based on subjective complaints of pain where no objective abnormalities are found. If the 2004 amendment had required *strict compliance* with or the *mechanical application* of the AMA Guides in assessing impairment, then the city might have a valid point because, as Dr. Ramsey explained here, "aspects of pain that do not have any accompanying objective measurement abnormalities, do not rate anything in the *AMA Guides*, whether or not these problems interfere with one's activities." Thus, under a strict application of the AMA Guides, a condition that has no objective manifestation cannot be considered an impairment. As the Sixth District found in *Milpitas Unified*, however, if the Legislature had intended to require such an approach to the determination of permanent disability, "it would have used different terminology to compel strict adherence to th[e] criteria [in the AMA Guides] for every condition." (*Milpitas Unified*, *supra*, 187 Cal.App.4th at p. 822.) Instead, the Legislature provided only that "the 'nature of the physical injury or disfigurement' shall *incorporate* the descriptions and measurements of physical impairments and the corresponding percentages of impairments." (§ 4660, subd. (b)(1), italics added.) Here, Dr. Ramsey complied with this legislative directive by rating Cannon's condition by analogy to the part of the AMA Guides dealing with a limp and

11

arthritis.  The city's argument that he was not allowed to do so because Cannon's condition had no objective manifestation is without merit.

The city's second argument is that under *Milpitas Unified*, a rating by analogy under *Almaraz/Guzman* is permissible only in complex or extraordinary cases.  The city asserts, ipse dixit, that "[p]lantar [f]asciitis is neither complex nor extraordinary" and therefore a rating by analogy was improper here.

We agree with the board majority that this is an unwarranted interpretation of the Sixth District's decision in *Milpitas Unified*.  What the Sixth District said was this:  "The Guides . . . cannot rate syndromes that are 'poorly understood and *are manifested only by subjective symptoms*.'  [Citation.]  [¶]  To accommodate *those complex or extraordinary cases*, the Guides calls for the physician's exercise of clinical judgment to assess the impairment most accurately." (*Milpitas Unified*, *supra*, 187 Cal.App.4th at p. 823, italics added.)  Thus, the Sixth District was using the term "complex or extraordinary cases" to describe "syndromes that are 'poorly understood and are manifested only by subjective symptoms,' " which the AMA Guides do not, and cannot, rate.

It is undisputed that Cannon's condition -- plantar fasciitis -- is manifested only by his subjective experience of pain.  Thus, his condition appears to fall right into the category of cases the Sixth District was describing in *Milpitas Unified*, where the AMA Guides "calls for the physician's exercise of clinical judgment to assess the impairment most accurately." (*Milpitas Unified*, *supra*, 187 Cal.App.4th at p. 823.)  Dr. Ramsey performed that assessment here and determined that Cannon's plantar fasciitis resulted in a 7 percent whole person impairment equivalent to a limp with arthritis.  The city has shown no error in that assessment and no error in the board's decision based on that assessment.

DISPOSITION

The board's opinion and decision after reconsideration is affirmed.  Respondents shall recover their costs on review in this court.  (Cal. Rules of Court, rule 8.493(a).)


       ROBIE      , J.


We concur:


      RAYE      , P. J.


      NICHOLSON   , J.

Filed 1/15/14

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| CITY OF SACRAMENTO, | C072944 |
| Petitioner, | (Super. Ct. No. ADJ7238353) |
| v. | ORDER CERTIFYING OPINION FOR |
| WORKERS' COMPENSATION APPEALS BOARD and ARTHUR CANNON, | PUBLICATION |
| Respondents. | |

THE COURT:

      The opinion in the above-entitled matter filed December 26, 2013, was not certified for publication in the Official Reports.  For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

    <u>   RAYE            </u>, P. J.

    <u>   NICHOLSON    </u>, J.

    <u>   ROBIE          </u>, J.

1

EDITORIAL LISTING


APPEAL from a decision of the Workers' Compensation Appeals Board. Affirmed.

Laughlin, Falbo, Levy & Moresi and Sidney L. Lamb; Lenahan, Lee, Slater & Pearse and Gerald M. Lenahan for Petitioner.

Mastagni, Holstedt, Amick, Miller & Johnsen; Jonathan W.A. Liff, Eric D. Ledger for Respondent Arthur Cannon.

No appearance for Respondent, Workers' Compensation Appeals Board.